## Case No. 618.

### ATKYNS v. BURROWS.

[1 Pet. Adm. 244.] [1]

District Court, D. Pennsylvania. 1804.

SEAMEN—WAGES—AUTHORITY OF MASTER TO DIS-
PLACE MATE—ADMIRALTY JURISDICTION — MAS-
TER AS WITNESS.

1. When and for what causes a mate may
be displaced by the master.

[Cited in Sherwood v. McIntosh, Case No.
12,778; The Exchange, Id. 4,594.]

2. Accounts for traffic and dealing between
master and mate, not subjects of admiralty ju-
risdiction.

3. The master is answerable to the owners
for damages accruing from the illegal discharge
of mariners, and also for extravagant wages
given.

[Cited in .The Fortitude, Case No. 4,953.]

4. Mate may sue for wages in the admiralty
court, [and] all rules operating on mariners ap-
ply to him.

[Cited in The Leonidas, Case No. 8,262.]

5. Master may displace the mate for just and
lawful cause; but this cause may be enquired
into.

[Cited in Thompson v. Busch, Case No. 13,-
944; Sherwood v. McIntosh, Id. 12,778;
Wood v. The Nimrod, Id. 17,959; The Ex-
change, Id. 4,594.]

6. Mate not being lawfully displaced, and
offering to do his proper duty, should have been
received; [and,] if a loss accrues when the mate
is unlawfully displaced, the master must an-
swer.

[Cited in Thompson v. Busch, Case No. 13,-
944; Sherwood v. McIntosh, Id. 12,778;
The Exchange, Id. 4,594.]

7. Master offered as a witness, and refused.

[Cited in The Trial, Case No. 14,170.]

In admiralty. The dispute, between the
master and the mate, in this cause, was con-
cerning the mate's wages. Process, or a ci-
tation was issued against the master and
owner. There were accounts of monies and
articles of traffic and dealing between the
captain and mate, but they were not consid-
ered within the jurisdiction of the admi-
ralty, except so far as they were connected
with the claim for wages. The master had,
a short time before the arrival of the vessel
at Philadelphia, the last port of delivery,
turned the mate before the mast. The mate
insisted on his wages, agreeably to contract.
He went on shore at Philadelphia, where
the voyage ended, against the captain's or-
ders, to take advice. He returned in a few
hours (far under forty-eight) and tendered
himself ready to assist in unlading the cargo,
as mate. The captain refused to reinstate
him in the capacity of mate, and he would
not labour as a mariner, in delivering the
cargo.

The forfeiture of wages was insisted on—
First. Because the captain had displaced the
mate at sea, for causes of which he was
competent to judge, and having legal au-
thority so to do. Second. The mate had gone

¹ [Reported by Richard Peters, Jr., Esq.]

on shore without the captain's orders and
against his directions—He had not assisted
to unlade the cargo; and had left the ship
before she was unladen, thereby incurring
a forfeiture of all his wages, as he was absent
without leave, and did not return on board,
within forty-eight hours, as the act of con-
gress directs. On the first point. The causes
assigned for displacing were—First. The
mate having been found asleep during his
watch—the proof was, that the mate, who
was lame in one of his feet, was found
during the watch, lying for a few minutes
on a hencoop. One witness said he was
asleep; the other could not be positive, and
spoke doubtfully. Second. The mate had
disobeyed the orders of the captain at sea,
in neglecting to have the jib hauled down,
on the approach of a squall, whereby the jib
was split. The proof on this point was not
satisfactory; it appeared that the mate had
at first ordered the jib down—afterwards he
conceived there would be no necessity for
it—but on the squall encreasing he repeated,
too late, the orders to haul it down: all this
happened in the course of a few minutes.

The captain was offered as a witness, to
prove these and other facts, which the mate
denied. The judge refused to permit the
captain to be sworn; alleging it to have
been his practice not to admit such testi-
mony. In this case there appeared much per-
sonal animosity; and the contest seemed to
lay entirely between the master and mate.
The master is answerable to the owners for
damages accruing to them by his improper
and illegal discharge of mariners, as well
as for extravagant wages given to, or injuri-
ous contracts made with them. This, he
said, was among the reasons inducing him
to refuse permitting the master to be exam-
ined as a witness, in such controversies.
The mate is permitted to sue in the admi-
ralty, as a mariner. All general rules in cases
of mariners apply to him. On the several
points, the judge declared his opinion, and
determined as follows.

BY THE COURT. When I first came in-
to this court, I found it taken for granted,
that the captain had a legal right to displace
the mate for just cause. I have seen re-
peated instances, where the exercise of this
power was necessary for the safety of the
ship; and I have examined into many cases,
wherein it had been executed from arbitra-
ry, capricious, and improper motives. It is
established by the maritime laws, and so it
ought to be, that the captain must be su-
preme in the ship. His lawful orders must
be obeyed. But when a contract is in ques-
tion, the law, by its proper courts, will see
that it is not vacated, for any other than
legal, reasonable and necessary causes. The
courts will control and examine the powers
and conduct of the master. He is authorized
to give all commands for the navigating, gov-
ernment and safety of the ship; but he has

no authority to nullify a contract at his will, or for light and trifling causes. A contract is a solemn engagement, not to be vacated without the consent of all parties, or on considerations, on which the law must decide through the tribunals established to make such decisions. The mate. is a respectable officer in the ship, and generally chosen with the consent of the owners; he is under the orders of the master, in his ordinary duty; but his contract is not subject to arbitrary control. He may forfeit his right to command and wages, by fraudulent, unfaithful, and illegal practices; by gross and repeated negligence, or flagrant, wilful and unjustifiable disobedience; by incapacity, brought on him by his own fault, to perform his duty, or palpable want of skill in his profession. These are very different from the charges alleged, but not satisfactorily proved, in this cause. I do not therefore think that the captain was justifiable in displacing the mate for the causes assigned. The safety of the ship often depends on this officer, who is sometimes more trustworthy and capable than the master; and commonly placed by the owners to encrease the security of their property. In case of the absence, incapacity or death of the captain; the command and responsibility devolve on the mate. [See note at end of case.] The causes of removal should, on all these considerations, be evident, strong and legally important.

The second point depends on the first—the mate tendered himself ready to perform his duty as mate, but the master refused to receive him in that capacity: he was not bound to act in any other station. If any loss accrued to the owners hereby, the master, and not the mate, is responsible. If a common mariner even rebels, disobeys and refuses to do his duty, but repents in time and offers amends, and a return to, and faithful discharge of his duty, the master is bound to receive him. If the master will not so receive and reinstate him, but discharges him, the maritime laws declare that he may follow the ship, and recover his wages for the whole voyage.

I do not think it necessary to determine the point made in this cause, "Whether the mate is, or is not, bound when the voyage is ended, to assist in unlading the cargo?" The mate seems peculiarly charged with this duty (however it may be with the mariners) and he offered to perform the service. I have on many occasions, given my opinion on the subject of the duty of mariners, under similar circumstances with the mate. On the whole, I think wages must be paid agreeably to the contract in the shipping articles.

[NOTE. The footnote (1 Pet. Adm. 247) cites a case in the district court for the district of Pennsylvania to the point that the command and responsibility necessarily fall upon the mate in the absence of the captain. This case is the same as Anonymous, Case No. 467a.]